OPINION
{¶ 1} Appellants, Charles and Jamie Tyas, appeal a decision of the Clinton County Court of Common Pleas, Juvenile Division, awarding permanent custody of their three children to Clinton County Children Services Board ("Board").
 {¶ 2} The Board began working with appellants in June 1998 when the Tyas' case was transferred from Highland County to Clinton County following a move by the family. On February 26, 1999, a complaint was filed by the Board alleging that appellants' two children, John (d.o.b. 4-15-97) and Sarah (d.o.b. 5-16-98), were neglected and dependent children. The children were adjudicated dependant on April 27, 1999. Sarah was placed in foster care and John was returned to his parents' care with protective supervision by the Board. Temporary custody of John was given to the Board on July 27, 1999 and he was placed in foster care with Sarah. John and Sarah were returned to their parents with protective supervision on May 22, 2000.
 {¶ 3} On February 15, 2000, Hillary Tyas was born. The Board filed a complaint the day after her birth, alleging that she was a neglected/dependant child. Hillary was adjudicated dependant on May 1, 2000. After a hearing on July 24, 2000, temporary custody of all three children was given to the Board and the children were placed in foster homes. On March 8, 2001, the Board filed for permanent custody of the children. A hearing was held over five days and extensive testimony was presented. The trial court issued a written decision on January 30, 2002 granting permanent custody of the three children to the Board. Appellants now appeal the trial court's decision awarding permanent custody to the Board and raise two assignments of error.
Assignment of Error No. 1
 "APPELLANTS RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THEIR DUE PROCESS RIGHTS UNDER THE STATE AND FEDERAL CONSTITUTIONS AND WERE DEPRIVED OF A FULL AND FAIR HEARING OF THEIR CASE."
Assignment of Error No. 2
 "APPELLANTS WERE DEPRIVED OF A FULL AND FAIR HEARING OF THEIR CASE DUE TO THEIR NOT BEING AFFORDED AN OPPORTUNITY TO CROSS-EXAMINE THE GUARDIAN AD LITEM."
 {¶ 4} In their first assignment of error, appellants argue that their trial counsel was ineffective. Because parental rights involve a fundamental liberty interest, procedural due process, which includes the right to effective assistance of counsel, applies to permanent custody hearings. In re Heston (1998), 129 Ohio App.3d 825, 827. When determining whether counsel was ineffective, the court must apply the two-tier test of Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052. First, appellants must show that counsel's actions were outside the wide range of professionally competent assistance. Second, appellants must show that they were prejudiced as a result of counsel's actions. Id. at 689. Prejudice will not be found unless appellants demonstrate there is a reasonable possibility that, if not for counsel's errors, the result of the trial would have been different. State v. Bradley (1989),42 Ohio St.3d 136, 143, certiorari denied (1990), 497 U.S. 1011,110 S.Ct. 3258. A strong presumption exists that licensed attorneys are competent and that the challenged action is the product of a sound trial strategy and falls within the wide range of professional assistance. Id. at 142.
 {¶ 5} Appellants argue that their trial counsel was ineffective for stipulating to the credentials of state witnesses, and allowing a witness to testify beyond the scope of her credentials. Appellant's counsel stipulated to the credentials of Dr. Jaya Venketaraman, a pediatrician who testified regarding the medical needs and treatment of the children, and Dr. William Kennedy, a clinical psychologist who evaluated the parents.
 {¶ 6} The determination of whether a witness qualifies to testify as an expert is within the discretion of the trial court. State v.Awkal, 76 Ohio St.3d 324, 331, 1996-Ohio-395. Often, attorneys stipulate to the qualification of a witness to testify as an expert. Both Dr. Venketaraman and Dr. Kennedy's curriculum vitae were submitted into evidence. Both physicians are highly qualified in their fields and have expertise in their respective areas. As such, the decision to stipulate to the credentials of these witnesses was a matter of trial strategy and was not ineffective assistance of counsel.
 {¶ 7} Appellants contend that trial counsel was ineffective for not objecting when Dr. Venketaraman testified beyond the scope of her credentials. In particular, appellant argues that the physician should not have been allowed to testify about more appropriate discipline techniques, such as redirection, and using better word choices (other than repeatedly yelling "stop") when trying to discipline the children. Contrary to appellants' argument, Dr. Venketaraman's expertise should not be limited to issues such as "childhood illnesses." The physician's curriculum vitae states that her present work experience involves direct patient care, including "psychosocial problems." As a board-certified pediatrician, basic issues of child discipline and safety were within Dr. Venketaraman's expertise. Accordingly, appellants' counsel was not ineffective for failing to object to this testimony.
 {¶ 8} Appellants also contend that witnesses from the Board may have testified beyond their expertise because no foundation was laid for the witnesses to be given the deference accorded to experts. However, there is no indication that these witnesses were presented as expert witnesses. Instead, they testified regarding their personal experiences with the Tyas family.
 {¶ 9} Finally, appellants contend that their counsel should have explored the issues raised in testimony that John's special needs may have inhibited useful application of parenting strategies and that separating John and Sarah helped the two children to progress more than when the two were together. Appellants contend that their counsel should have questioned the state's expert on these issues. However, an appellate court reviewing an ineffective assistance of counsel claim must not scrutinize trial counsel's strategic decision to engage, or not engage, in a particular line of questioning on cross-examination. State v.Revels, Butler App. Nos. CA2001-09-223, CA2001-09-230, 2002-Ohio-4231. Such decisions are presumed to be the product of a sound trial strategy. Id.; see, also, State v. Clayton (1980), 62 Ohio St.2d 45, 48-49. Accordingly, we find that appellants' trial counsel was not ineffective, and overrule the first assignment of error.
 {¶ 10} In appellants' second assignment of error, they contend that they were denied due process because they were not afforded the opportunity to cross-examine the guardian ad litem. After this case was appealed and before oral arguments, the Ohio Supreme Court examined the issue of whether the parties to permanent custody proceeding should be allowed to cross-examine the guardian ad litem. In re Hoffman,97 Ohio St.3d 92, 2001-Ohio-5368. The Court examined cases from other states and determined that, when the guardian ad litem's report will be a factor in the trial court's decision, the parties to the proceeding have the right to cross-examine the guardian ad litem concerning the contents of the report and the basis for the custody determination. Id. at 97.
 {¶ 11} However, in Hoffman, the trial court denied the mother's requests to call the guardian as a witness and to cross-examine the guardian regarding the contents of the report. In this case, no request was made to call the guardian ad litem as a witness or to cross-examine her regarding the report. In addition, no objection was made regarding the admission of the report into evidence. Because appellants failed to object or even raise this issue before the trial court, we examine this assignment of error only for plain error. The plain error doctrine "may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." Goldfuss v. Davidson,79 Ohio St.3d 116, at syllabus, 1997-Ohio-401.
 {¶ 12} Appellants, while acknowledging that no objection was made in the trial court relative to this issue, urge us to consider the failure to question the guardian ad litem as plain error in and of itself without consideration of the facts of this case. Appellants urge this court to find the error as "falling within a limited class of fundamental constitutional errors that defy analysis by `harmless error' standards."
 {¶ 13} However, after consideration of this issue, we find that cross-examination of a guardian ad litem does not fall within the limited and narrow scope of constitutional rights not subject to harmless error analysis. The United States Supreme Court has stated that while most constitutional errors can be harmless, there are some constitutional rights that are so basic to a fair trial that their infraction can never be harmless error. Arizona v. Fulminate (1991), 499 U.S. 279, 309,111 S.Ct. 1246, 1265. These constitutional deprivations involve structural defects affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself. Id. at 1265. Such violations include: the total deprivation of the right to counsel at trial, Gideon v. Wainwright (1963), 372 U.S. 335, 83 S.Ct. 792; a judge who was not impartial, Tumey v. Ohio (1927), 273 U.S. 510, 47 S.Ct. 437; unlawful exclusion of members of the defendant's race from the grand jury, Vasquez v. Hillery (1986), 474 U.S. 254, 106 S.Ct. 617; the right to self-representation at trial, McKaskle v. Wiggins (1984), 465 U.S. 168,104 S.Ct. 944; and the right to a public trial, Waller v. Georgia
(1984), 467 U.S. 39, 104 S.Ct. 2210.
 {¶ 14} In contrast, the Supreme Court found constitutional errors involving the admission of evidence are errors in the trial process itself and, thus, subject to harmless error analysis. For example, a majority of the court found that the admission of an involuntarily obtained confession is a type of trial error and subject to harmless error analysis, Arizona v. Fulminate (1991), 499 U.S. 279,111 S.Ct. 1246. Likewise, the Court found the admission of an out-of-court statement by a nontestifying codefendant was subject to harmless error analysis. Brown v. United States (1973), 411 U.S. 223, 93 S.Ct. 1565.
 {¶ 15} In Ohio, courts have applied the plain error doctrine to a variety of constitutional errors, including errors that occur in death penalty cases. See, e.g., State v. LaMar, 95 Ohio St.3d 181,2002-Ohio-2128; State v. Twyford, 94 Ohio St.3d 340, 2002-Ohio-894; Statev. Phillips, 74 Ohio St.3d 72, 1995-Ohio-171; State v. Cooey (1989),46 Ohio St.3d 20. Because the error in this case is one involving the trial process itself and not one affecting the entire framework within which the trial proceeds, we decline to adopt appellant's argument that reversible error occurred solely on the basis that the guardian ad litem was not cross-examined.
 {¶ 16} Turning to the case at bar, we find the facts surrounding the guardian ad litem's report in Hoffman are in sharp contrast to the facts involving the guardian ad litem's report in this case. In Hoffman, the trial court relied on the guardian's report, and quoted portions of the report and the report's factual statements in its written decision. In this case, the trial court noted in its decision that the guardian had filed a report documenting her lengthy involvement in the case and that the guardian recommended granting permanent custody to the Board. In its decision, the trial court quoted only the following observation of the guardian: "It is heartbreaking to watch Mr. and Mrs. Tyas struggle to care for their children because it is obvious that they love their children very much[.] [H]owever, it is unfair to the children to remain in foster care while their parents continue to try to parent." Instead of relying on the factual information contained in the guardian ad litem's report, the trial court's decision documents in detail the extensive testimony it relied upon. The state presented 13 witnesses who testified in support of the petition for permanent custody. These witnesses included the children's pediatrician, the clinical psychologist who evaluated the parents, John's speech therapist, an early intervention specialist, a family therapist, a professional parent mentor, four Board case workers, a Board foster/adoption/kinship unit supervisor, and the children's two foster parents.
 {¶ 17} Furthermore, the rationale supporting the Hoffman court's conclusion that parties have a right to cross-examine the guardian ad litem concerning the contents of the report and the basis for the custody recommendation is that "[w]ithout these safeguards, there are no measures to ensure the accuracy of the information provided and the credibility of those who made statements." In this case, the overwhelming majority of the persons interviewed in the guardian ad litem's report testified at the hearing. Instead of using the brief sentences of the people involved in the case which were contained in the guardian ad litem's report, the trial court heard and relied on the lengthy and in-depth testimony from these people as actual witnesses. Thus, the accuracy of the information provided and the credibility of the statements were capable of being tested at the hearing.
 {¶ 18} In conclusion, we find no plain error in the fact that the guardian ad litem was not cross-examined in this case. The vast majority of the information in the report was testified to at trial by the persons who gave information to the guardian. In addition, the trial court's decision relies on this direct testimony, not the report of the guardian, to make factual conclusions. Appellant's second assignment of error is overruled.
Judgment affirmed.
WALSH, P.J., and VALEN, J., concur.