OPINION
{¶ 1} Appellant-mother Michelle Huffman Fitzgerald (hereinafter appellant), appeals from the judgment entered in the Stark County Court of Common, Juvenile Division, which terminated all parental rights, privileges and responsibilities of appellant with regard to her minor children and ordered that permanent custody of the minor children be granted to the Stark County Department of Jobs and Family Services (hereinafter SCDJFS).
 {¶ 2} Appellant is the natural mother of Dakota Huffman born November 16, 1994 and Cody Huffman, born November 18, 1992.
 {¶ 3} The alleged father of Cody Huffman is Ronald Anderson. Ronald Anderson's whereabouts are unknown. The alleged father of Dakota is unknown.
 {¶ 4} On or about October 24, 2002, the SCDJFS filed a complaint alleging that the children were dependent and/or neglected. The initial concerns identified by the agency were raised in a referral regarding alleged physical abuse of the children, perpetrated by the mother's boyfriend. The family had an "extensive" history with both Wayne and Holmes County, Ohio Children's Services Agencies according to the complaint.
 {¶ 5} In response to these concerns, the SCDJFS made reasonable efforts to prevent the children's removal from the home by attempting to provide the family with the agency's "First Unit" intensive home base services, supervision and training. The assigned First Unit assessment worker made multiple attempts to contact the mother for approximately one month without much success. After finally making arrangements to meet with the mother at the residence, the worker found the children unsupervised with the mother's whereabouts unknown. After waiting for the mother for approximately one hour, the Canton Police Department assumed emergency control over the children pursuant to Rule 6 of the Ohio Rules of Juvenile Procedure.
 {¶ 6} On November 22, 2002, the mother stipulated to a finding of dependency of these children and the court maintained both boys in temporary custody of SCDJFS at the dispositional hearing.
 {¶ 7} A case plan was adopted by the court and regularly scheduled review hearings were conducted by the courts throughout the pendency of the case. On October 24, 2003, both boys were returned to mother's custody subject to protective supervision at the agency's request. The First Unit was assigned to work with the mother.
 {¶ 8} On or about March 24, 2004, SCDJFS filed a Motion for Immediate Review based upon a referral due to domestic violence occurring in the home at the hands of the mother's new husband, Shawn Fitzgerald. A "No Contact Order" between Mr. Fitzgerald and the children was sought.
 {¶ 9} Subsequently, SCDJFS withdrew the Motion for the No Contact Order, with an agreement by the mother to immediately engage in domestic violence counseling at RENEW.
 {¶ 10} On May 7, 2004, SCDJFS filed a second Motion for Immediate Review, requesting again that the court issue a "No Contact Order" between Mr. Fitzgerald and the children. At the May 7, 2004 hearing the attorney/Guardian Ad Litem advocated the removal of the children from the home. However, the court maintained the children in the appellant's custody and issued the No Contact Order.
 {¶ 11} On June 1, 2004 the Guardian Ad Litem filed a Motion for Immediate Review, requesting the children be removed from appellant's custody and placed in the temporary custody SCDJFS based upon the Guardian's belief that the "No Contact" order had been violated. On June 3, 2004, the Court authorized the removal of the children placing them back into the temporary custody of the agency. The children have remained in the custody of SCDJFS since that time.
 {¶ 12} On September 10, 2004, the trial court direct SCDJFS to address the children's lack of permanency based upon its findings that the mother had lost her housing, lacked stability and had yet to attend RENEW counseling to address domestic violence issues.
 {¶ 13} On September 22, 2004 the SCDJFS filed a Motion for Permanent Custody which was amended on October 1, 2004. The agency which filed the Motion for Permanent Custody included in the case plan a specific plan of the agency's action to seek an adoptive family for the child and to prepare the children for adoption as required by R.C. 2151.413 (D).
 {¶ 14} On January 27, 2005 appellant filed a Motion for In-Camera Interview of the children. On March 30, 2005 the trial court held a hearing regarding the permanent custody of the children. Additionally an In-Camera interview of both children was conducted.
 {¶ 15} On March 28, 2005 the trial court issued a Judgment Entry and Findings of Fact and Conclusions of Law which granted permanent custody to SCDJFS.
 {¶ 16} It is from the March 28, 2005 Judgment Entry that appellant appealed raising the following two assignments of error:
 {¶ 17} "APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AMENDMENT AT THE HEARING TO DETERMINE PERMANENT CUSTODY OF HER TWO MINOR CHILDREN.
 {¶ 18} "THE JUDGMENT OF THE TRIAL COURT THAT THE BEST INTEREST OF THE MINOR CHILDREN WOULD BE SERVED BY THE GRANTING OF PERMANENT CUSTODY TO SCDJFS IS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."
 I. {¶ 19} In her First Assignment of Error, appellant contends she was deprived of her constitutional right to the effective assistance of counsel. We disagree.
 {¶ 20} "Where the proceeding contemplates the loss of parents' `essential' and `basic' civil rights to raise their children, * * * the test for ineffective assistance of counsel used in criminal cases is equally applicable to actions seeking to force the permanent, involuntary termination of parental custody." In re Wingo (2001),143 Ohio App.3d 652, 666, 758 N.E.2d 780, quoting In re: Heston
(1998), 129 Ohio App.3d 825, 827, 719 N.E.2d 93. This Court has recognized "ineffective assistance" claims in permanent custody appeals. See, e.g., In re: Utt Children, Stark App. No. 2003CA00196, 2003-Ohio-4576.
 {¶ 21} Our standard of review for an ineffective assistance claim is thus set forth in Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052, 80 L.Ed.2d 674. Ohio adopted this standard in the case ofState v. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373. These cases require a two-pronged analysis in reviewing a claim for ineffective assistance of counsel. First, we must determine whether counsel's assistance was ineffective; i.e., whether counsel's performance fell below an objective standard of reasonable representation and was violative of any of his essential duties to the client. If we find ineffective assistance of counsel, we must then determine whether or not the defense was actually prejudiced by counsel's ineffectiveness such that the reliability of the outcome of the proceeding is suspect. This requires a showing that there is a reasonable probability that but for counsel's unprofessional error, the outcome of the proceeding would have been different. Id. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any give case, a strong presumption exists that counsel's conduct fell within the wide range of reasonable professional assistance. Bradley at 142,538 N.E.2d 373.
 {¶ 22} The United States Supreme Court and the Ohio Supreme Court have held a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Bradley at 143, quotingStrickland at 697. Accordingly, we will direct our attention to the second prong of the Strickland test.
 {¶ 23} Upon review of the record, we are unpersuaded that appellant has met the second prong of the Strickland test, supra. The appellant argues that she was denied effective assistance of counsel when her counsel failed to present evidence regarding whether or not the children can be placed with either parent within the foreseeable future or should be place with either parent.
 {¶ 24} Pursuant to R.C. 2151.414(B)(1), a court may grant permanent custody of a child to a state agency if the court determines, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply:
 {¶ 25} "(a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
 {¶ 26} "(b) The child is abandoned.
 {¶ 27} "(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
 {¶ 28} "(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999".
 {¶ 29} Regarding the issue of whether a child can or should be placed with either parent within a reasonable time in the context of this statutory scheme, the court, in In re: Thompson (Feb. 6, 2003), 10th Dist No. 02AP-557, 02AP-557, 2003-Ohio-580, at ¶ 49, stated as follows:
 {¶ 30} "Pursuant to R.C. 2151.414(B)(1)(d), when a child has been in the custody of FCCS for 12 or more months of a consecutive 22-month period ending on or after March 18, 1999, a trial court need not engage in an analysis of whether the child can or should be placed with either parent within a reasonable time. * * * Instead, the only consideration in such a case is the best interests of the child, which is determined by consideration of the factors set forth in R.C. 2151.414(D) in light of the facts of the particular case". (Citation omitted.) In the case at bar, the trial court, therefore, was not required to make a finding that the children could not be returned within a reasonable time, and correctly proceeded directly to the best interest portion of the hearing. In re Lewis/Louk Children (May 3, 2005), 5th Dist. No. 2004CA00373, 2005-Ohio-2344 at ¶ 24; In re Whipple Children (March 10, 2003), 5th Dist. No. 2002CA00406, 2003-Ohio-1101 at ¶ 26.
 {¶ 31} Consequently, even though the court cited the factor in its Judgment Entry that the children could not be placed with appellant within a reasonable time or should not be placed with appellant, this finding was unnecessary to the resolution of this case. See In re:Thompson, supra; In re: Lewis/Louk Children, supra; In re WhippleChildren. The only consideration in such a case is the best interests of the child, which is determined by consideration of the factors set forth in R.C. 2151.414(D). Id.
 {¶ 32} Thus, trial counsel was not ineffective for not presenting evidence regarding whether or not the children can be placed with either parent within the foreseeable future or should be place with either parent.
 {¶ 33} Alternatively we note that appellant's counsel did present evidence at the disposition phase of the hearing of appellant's continued counseling at Renew, her obtaining steady employment and appellant's obtaining appropriate housing. (T. at 88-89; 105). Accordingly, the trial court had the information prior to deciding whether it was in the best interest of the children to be returned to appellant's custody or to grant the appellee's motion for permanent custody.
 {¶ 34} We find no showing of prejudice to appellant, and, therefore, no ineffective assistance of counsel by not presenting evidence regarding whether or not the children can be placed with either parent within the foreseeable future or should be place with either parent.
 {¶ 35} Appellant's First Assignment of Error is overruled.
 II. {¶ 36} Herein, appellant-mother asserts the trial court erred in granting permanent custody of her children to the Agency. Specifically, appellant-mother submits the trial court's decision was against the manifest weight of the evidence, and the grant of permanent custody was not in the best interests of the children.
 {¶ 37} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (February 10, 1982), Stark App. No. CA-5758, unreported. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Construction (1978), 54 Ohio St.2d 279. Reviewing courts should accord deference to the trial court's decision because the trial court has had the opportunity to observe the witnesses' demeanor, gestures, and voice inflections which cannot be conveyed to us through the written record, Miller v. Miller (1988), 37 Ohio St. 3d 71.
 {¶ 38} Pursuant to R.C. 2151.414(B)(1)(d), when a child has been in the custody of SCDJFS for 12 or more months of a consecutive 22-month period ending on or after March 18, 1999, a trial court need not engage in an analysis of whether the child can or should be placed with either parent within a reasonable time. See, e.g., In re Williams, supra, In re:Lewis/Louk Children, supra; In re: Whipple Children. Instead, the only consideration in such a case is the best interests of the child, which is determined by consideration of the factors set forth in R.C. 2151.414(D) in light of the facts of the particular case. Id.
 {¶ 39} Thus, the trial court is charged with considering the interaction and interrelationship of the child with parents, siblings, relatives, foster parents, and others who may significantly affect the child, the wishes of the child, the custodial history of the child, including whether the child has been in the temporary custody of SCDJFS for 12 or more months of a consecutive 22-month period, the child's need for a legally secure placement and whether that placement can be achieved without a grant of permanent custody to SCDJFS, and whether any factors listed in divisions (E)(7) to (12) of R.C. 2151.414 apply in relation to the parents and child. R.C. 2151.414(D); Williams, supra. R.C. 2151.414(E) (7) to (12) lists the additional factors of whether the parent has been convicted of a crime, withheld medical treatment or food from the child, placed the child at risk of harm due to alcohol or drug abuse, abandoned the child, had parental rights terminated with respect to a sibling of the child, or is incarcerated at the time of the filing of the motion for permanent custody.
 {¶ 40} Appellant argues that she has remedied several of the problems addressed in her case plan and the children have suffered physical and sexual abuse while in the custody of SCDJFS. Appellant contends that the finding by the trial court that the best interest of the children would be served by awarding permanent custody to SCDJFS is therefore against the manifest weight of the evidence.
 {¶ 41} The evidence demonstrated the successful efforts appellant-mother had made in the case to regain custody of her children. Even so, the relevant issue is the best interests of the children. On that point, the evidence demonstrates that the improvement the appellant-mother has made in her life is tentative and, perhaps, temporary, and that she is at risk of relapse.
 {¶ 42} The trial court made findings of fact and conclusions of law with regard to the best interest of the child. The trial court considered the factors listed in R.C. 2151.414 and determined that it was in the best interest of the children to be placed in permanent custody of SCDJFS.
 {¶ 43} We have frequently noted "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." In re Mauzy Children
(Nov. 13, 2000), Stark App. No. 2000CA00244, quoting In re Awkal (1994),95 Ohio App.3d 309, 316, 642 N.E.2d 424. Furthermore, "[i]t is axiomatic that both the best-interest determination and the determination that the child cannot be placed with either parent focus on the child, not the parent." In re: Mayle (July 27, 2000), Cuyahoga App. Nos. 76739, 77165, citing Miller v. Miller (1988), 37 Ohio St.3d 71, 75,523 N.E.2d 846.
 {¶ 44} In the case sub judice, upon review of the record and the extensive findings of fact and conclusions of law therein, we conclude the trial court's grant of permanent custody of the children to SCDJFS was made in the consideration of the children's best interests and did not constitute an abuse of discretion.
 {¶ 45} The findings show that the trial court gave considerable discussion to the evidence in question, but ultimately concluded that appellant-mother's fitness to care for and protect her children had not improved. It is not the duty of this court to reweigh the evidence.Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80,461 N.E.2d 1273, 1276. The trial court is in the best position to determine the credibility of proffered testimony.
 {¶ 46} Our review of the record reveals evidence was presented on relevant factors that R.C. 2151.414(D) requires the court to consider. Further there was testimony about the children's need for a legally secure permanent placement and whether that type of placement could be achieved without a grant of permanent custody to SCDJFS.
 {¶ 47} The trial court conducted an in-camera interview with the boys. The Court noted that the boys "expressed . . . their strong wishes to return to their mother's custody. They are bonded with their mother. Their mother is committed to her visitation schedule and has attended her visits. Despite this bond, the SCDJFS caseworker testified that severing the bond between the mother and the boys would be outweighed by the benefits of permanency. She describes the bond between them as, "unhealthy" — a bond which `makes the children dependant' rather than a healthy bond wherein a parent is doing her best to act in the child's best interests." (Findings of Fact and Conclusions of Law, filed March 28, 2005 at 8). The Guardian Ad Litem testified and presented a written report to the Court recommending that permanent custody be granted to SCDJFS. (T. at 115). The Guardian Ad Litem cites the mother's repeated relationships with abusive partners and her failure to protect her children even while under an order of protective supervision. (Id. at 120-21). Specifically, the Guardian Ad Litem testified: "[t]he overriding question in my mind is can mother protect them and based on what I've observed and seen personally, I think that she would go [sic] and she's admitted that she would lie in order to keep her kids and that dishonesty about the safety and welfare of her kids, I don't believe deserves a third or a fourth or a fifth chance. (T. at 125-26; see also, T. at 98-101). The Court further noted that appellant "has been historically resistant to attending" domestic violence counseling until after the motion for permanent custody had been filed. (Findings of Fact and Conclusions of Law, filed March 28, 2005 at 9).
 {¶ 48} After examining the record, we find no abuse of discretion on the part of the trial court. Additionally, we find that there was clear and convincing evidence that supports the trial court's decision that granting permanent custody to SCDJFS is in the children's best interests.
 {¶ 49} Because the award was based upon a substantial amount of credible and competent evidence, we must defer to the trial court's factual determination that it was appropriate for SCDJFS to receive permanent custody of the children.
 {¶ 50} Accordingly, appellant-mother's Second Assignment of Error is overruled.
 {¶ 51} For the foregoing reasons, the judgment of the Court of Common Pleas of Stark County, Juvenile Division, Ohio, is affirmed.
Gwin, P.J., Hoffman, J., and Wise, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Stark County, Juvenile Division, Ohio, is affirmed. Costs to appellant.